IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-103-FL

| | |
|---|---|
| CARL E. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| BSH HOME APPLIANCES CORP.; BLUE ) | |
| ARBOR, INC.; and TESI SCREENING, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on the motion of defendant BSH Home Appliances ("BSH") to compel arbitration and stay proceedings. (DE 13). The issues have been briefed, and, in this posture, are ripe for ruling. For the reasons that follow, defendant BSH's motion is denied.

## BACKGROUND

On June 15, 2015, plaintiff filed suit, alleging defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by refusing to hire him in retaliation for filing an EEOC complaint in 2005, a protected activity under the statute. In his complaint, plaintiff alleges that, as a former employee of defendant BSH, he filed an EEOC complaint against defendant BSH alleging discriminatory termination. This claim was resolved through settlement, and plaintiff returned to work with defendant until 2008, when he left for personal reasons. In July 2013, plaintiff saw an employment advertisement for a "Setter" position in defendant BSH's New Bern, North Carolina, plant. Because plaintiff performed the "Setter" position when previously employed by

defendant BSH, he applied for the advertised position. Plaintiff was informed defendants Blue Arbor, Inc. and TESI Screening, Inc., (jointly "TESI"),[1] would be hiring on defendant BSH's behalf, and accordingly, he submitted his application materials through defendants TESI. In August 2013, plaintiff, through defendant TESI, was notified that his application was rejected, because he "had sued [defendant BSH] before." (Compl. ¶ 12).

On July 16, 2015, in lieu of an answer, defendant BSH filed a motion to compel arbitration and stay proceedings, alleging plaintiff had signed an arbitration agreement during his previous employment.[2] In support of its motion, defendant BSH submits a form signed by plaintiff on June 23, 2005, which it contends demonstrates plaintiff's acknowledgment of defendant's employee handbook, including the arbitration agreement ("the acknowledgment") (DE 14-1). The acknowledgment provides:

> I have received the [defendant], New Bern, NC Handbook and I am responsible to read and adhere to the contents. Should I have any questions concerning the meaning or intent of the contents within, I will contact my supervisor or the human resources department for clarification and assistance. I agree, without reservation, to follow the handbook's policies, procedures and practices.

(Id.). Defendant further provides a dispute resolution policy ("DRP"), dated March 20, 2015, and the arbitration agreement dated June 1, 2005 ("arbitration agreement") (DE 14-2); as well as an affidavit of Cynthia White ("White"), defendant BSH's Human Resources Administrator in New Bern, wherein she avers that the submitted acknowledgment, DRP, and arbitration agreement came

---

[1] According to plaintiff's complaint, TESI and Blue Arbor are the same corporation. (Compl. ¶¶ 4-6). TESI, as plaintiff terms the two defendants jointly, is an agency that places employees with defendant BSH.

[2] At the court's request, defendants TESI responded to defendant BSH's motion to address the claims against them in the event the claims against defendant BSH were submitted to arbitration. For the reasons that follow herein, the court need not address whether plaintiff's claims against TESI should be stayed.

2

directly from plaintiff's employment file. (DE 14-3). The arbitration agreement provides in pertinent part:

> Under this Policy, which is a condition of continued employment and binding upon the Company and the employee, all claims and disputes a current or former employee within the United States might have arising out of the employee's employment or termination, which are not resolved through the Company's Open Door Policy and other normal human resource channels, shall be resolved through mediation and, if necessary, binding arbitration . . . . The disputes covered by this Policy include any claim under applicable state or federal law a current or former employee within the United States might have . . . .

(Id.). In response, plaintiff argues that he was without notice of the arbitration agreement because he never received the DRP and arbitration agreement in his employee handbook, and in any event, that the current dispute does not fall within the scope of the arbitration agreement.

## COURT'S DISCUSSION

A movant can compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, by demonstrating:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [non-movant] to arbitrate the dispute.

Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991). The second element, whether there is a contract to arbitrate, is a question of law for the court to decide. A.T. Massey Coal Co. v. Int'l Union, 799 F.2d 142, 146 (4th Cir. 1986). Because plaintiff contests the existence and validity of the arbitration agreement, the court "engage[s] in a limited review to ensure . . . that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Hooters of America, Inc. v. Phillips, 173 F.3d 933, 937-38 (4th Cir. 1999) (internal citations omitted).

3

1. Court Review of Arbitrability

As a preliminary matter, defendant BSH argues that the arbitration agreement "clearly and unmistakably" assigns the question of arbitrability to the arbitrator, and contends that the court should not undertake to determine the validity of the agreement at all. (Def. Mem., DE 14 at 5). Defendant BSH's argument is without merit. An arbitration agreement may reserve jurisdiction to the arbitrator when the "parties clearly and unmistakably provide," AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986), but that maxim does not apply here. "[W]here a contract commits to arbitration those matters 'arising under' the agreement, we may not submit questions of contract formation to the arbitrator, as those questions cannot 'arise under' an agreement that was never validly formed." Peabody Holding Co., LLC v. United Mine Workers of Am., 665 F.3d 96, 104-05 (4th Cir. 2012). In addition, the "clear and unmistakable" standard is exacting, and the presence of an expansive arbitration clause listing all disputes arising from employment, without more specificity, will not suffice. Id. at 102.

Defendant BSH's arbitration agreement does not refer to the arbitrator questions of arbitrability, because it contains only a general, expansive coverage clause. In any event, plaintiff's response raises questions of whether an agreement exists at all. Accordingly, the court properly may determine whether the arbitration agreement presented by defendant BSH is a valid and enforceable contract.

2. Plaintiff's Assent to the Arbitration Agreement

As a general rule, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). The "touchstones of arbitrability

4

analysis" are the "twin pillars" of the parties' "consent and intent" to arbitrate. Peabody, 665 F.3d at 103. Although there exists a legal presumption in favor of arbitrability, that presumption applies only when a "validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand," not where there remains a question as to whether an agreement even exists between the parties in the first place. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 288, 302 (2010)); see also Raymond James Fin. Serv., Inc. v. Cary, 709 F.3d 382, 386 (4th Cir. 2013).

Agreements to arbitrate are construed according to the ordinary rules of contract interpretation. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001). The existence of a valid and enforceable contract is governed by the contract formation and interpretation principles of the forum state. Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569 (4th Cir. 1998). Neither party disputes that North Carolina law applies here, because the arbitration agreement was entered into, if at all, in North Carolina. Before a valid contract can exist under North Carolina law, the parties must "assent to the same thing in the same sense, and their minds meet as to all terms." Normile v. Miller, 313 N.C. 98, 103 (1985). If a question arises concerning a party's assent to a written instrument, the court must first examine the written instrument to ascertain the intention of the parties. See Sell v. Hotchkiss, 264 N.C. 185, 191 (1965).

The arbitration agreement in this present matter is not signed, and there is no evidence of plaintiff's assent within the four corners of the written agreement.[3] Regardless, "[w]ell-established common law principles dictate that in an appropriate case a non-signatory can enforce, or be bound

---

[3] Defendant contends that Jackson v. Univ. of Phoenix, Inc., 5:13-CV-736-BO, 2014 WL 672852 (E.D.N.C. Feb. 20, 2014), provides a basis to overcome plaintiff's position that he did not sign the arbitration agreement. Jackson, however, is inapposite. There, the plaintiff contended that his signature was forged. Here plaintiff does not so argue. In any event, the decisions cited in the text control the court's analysis.

5

by, an arbitration provision within a contract executed by other parties." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000) (emphasis added). Following the Second Circuit, the Fourth Circuit has recognized five theories arising from common law principles that provide a basis for binding a non-signatory to an arbitration agreement: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel. Int'l Paper, 206 F.3d at 417 (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).

   A. Incorporation

The law of North Carolina is clear that unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it. Walker v. Westinghouse Elec. Corp., 77 N.C. App. 252, 259 (1985). "In order to find that terms included in an employee handbook or policies are 'expressly included' in a contract, North Carolina courts 'require language that unmistakably indicates such incorporation.'" Williamson v. Carolina Power & Light Co., 754 F. Supp. 2d 787, 793 (E.D.N.C. 2010) (quoting Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 586 (M.D.N.C. 2003)).

Defendant BSH argues that plaintiff's signature on the acknowledgment binds plaintiff to the arbitration agreement defendant BSH contends was contained within the handbook. An employee handbook or policy manual is a not a binding contract, however. See Norman, 286 F. Supp. 2d at 585; Walker, 77 N.C. App at 259. While an arbitration agreement contained within a handbook may be contractually binding, defendant BSH must demonstrate plaintiff's assent to the terms of the arbitration agreement in a contractually valid manner. Relying on the one page acknowledgment dated June 23, 2005, defendant BSH contends that plaintiff waived his right to sue.

6

The acknowledgment does not refer to an arbitration agreement, nor does it refer specifically to the DRP that defendant BSH contends plaintiff acknowledged. (Id. at 10). Defendant BSH cannot claim that plaintiff's signature on the acknowledgment indicates acceptance of the arbitration agreement, when the waiver of plaintiff's right to sue is never mentioned explicitly within the acknowledgment.

In this respect, this case is distinguishable from those finding an arbitration agreement incorporated by reference into a handbook or written employment contract. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) (holding signed registration materials that explicitly reference arbitration constituted assent to arbitration); O'Neil v. Hilton Head Hosp., 115 F.3d 272 (4th Cir. 1997) (finding an acknowledgment form recognizing receipt of handbook constituted a valid arbitration agreement when the document signed by plaintiff specifically referenced agreement to arbitration as a condition of employment and continued employment); United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 381 (4th Cir. 2008) (finding a valid arbitration agreement where paragraph in employment contract indicated in bold typeface the existence of an arbitration agreement and plaintiffs both initialed the paragraph); Martin v. Vance, 133 N.C. App 116, 118, 123 (1999) (holding that a unilaterally promulgated policy manual is contractually insufficient alone, but a signed certification form explicitly referencing a separate dispute resolution policy available for reading upon request, does create a valid arbitration agreement). Rather, this case is similar to Lorenzo v. Prime Commc'ns, L.P., No. 5:12-CV-69-H, 2014 WL 3366073 & 2014 WL 3366123 (E.D.N.C. July 9, 2014), where the court held that the party seeking arbitration did not prove the non-moving party's assent to arbitrate by producing only a

7

signed handbook acknowledgment form not containing specific references to dispute resolution policies.

Because defendant BSH has not pleaded any facts pertaining to the circumstances of plaintiff's 2005 employment contract, nor any facts that would show the handbook was incorporated expressly into an existing contractual agreement, defendant has not demonstrated incorporation.

B.  Assumption

Defendant BSH alternatively argues that continuance of employment after notice of an arbitration agreement constitutes assumption of the agreement. Assumption requires proof of two elements: 1) awareness by the contesting party of the binding nature of the agreement, and 2) manifestation of intent to be bound. See Thomson-CSF, 64 F.3d at 777; accord Air Lines Pilots Ass'n, Intern. v. U.S. Airways Grp., Inc., 609 F.3d 338, 347 (4th Cir. 2010). Because the validity of an arbitration agreement is a state contract law issue, assumption of a contractual obligation also is governed by state law. See generally Cara's Notions, 140 F.3d at 569. Voluntarily continuing employment after actual notice of an arbitration agreement satisfies the elements of assumption. See O'Neil v. Hilton Head Hosp., 115 F.3d 272, 275 (4th Cir. 1997) ("This clause placed no employment condition on the hospital, but rather imposed a condition upon [plaintiff]: if she wished to continue employment, she had to agree to arbitration"); Howard v. Oakwood Homes. Corp., 134 N.C. App. 116, 121 (1999) (holding a non-signatory may be said to have assumed the liabilities of an arbitration agreement when he "[c]ontinue[s] in defendant's employment with actual notice" of the dispute resolution procedures); see also Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001).[4] For example, in Hightower, the court, applying North Carolina law, held that a plaintiff who

---

[4] Many of these cases arise from disputes over the existence of consideration. Plaintiff does not dispute that mutual promises to arbitrate contained within the agreement would amount to sufficient consideration. Rather, plaintiff contends he never knew of defendant BSH's policy, and that there never was a meeting of the minds.

8

continued working for three months after undisputedly attending a meeting on dispute resolution policies and signing an attendance sheet indicating receipt of materials pertaining to dispute resolution policies impliedly acquiesced to the arbitration agreement, even though he never signed the contract itself. Id.

Here, there is no evidence plaintiff ever received actual notice of the arbitration agreement. Defendant BSH has failed to produce the handbook, policies, and agreement in effect on June 23, 2005, when plaintiff signed the acknowledgment. Defendant BSH has submitted to the court only the one page acknowledgment with a date of June 23, 2005; the purported DRP, with a date of March 20, 2015; and an arbitration agreement, in addendum form, with a date of June 1, 2005. Each document appears separate and distinct, rather than pieces of one handbook, and the White affidavit does not help defendant BSH's case. White, under oath, declares, "Attached hereto as Attachment A-B are true and correct copies of Mr. Carl Davis' signed Acknowledgment Form and the Dispute Resolution Policy," and "I retrieved Plaintiff's personnel file from secured archived files, also under my control." (DE 14-3) (emphasis added). Defendant BSH fails to explain how a document dated March 20, 2015, could be present in plaintiff's secure, archived file, when both parties agree that plaintiff's original employment ended in 2008. (Def. Mem. at 2; Compl. ¶ 13).

Defendant BSH cannot contend that it has submitted to the court the exact arbitration agreement, as it existed in 2005 when plaintiff formerly was employed by defendant. (DE 14-2, at 10) (stating "The terms of this Policy in effect at the time the facts giving rise to the dispute took place, are the terms which will be binding on the Company and the employee. Otherwise, the Company reserves the right to change, modify or discontinue this Policy at any time upon prior written notice to the Company's current employees"). Defendant BSH's ability to change the policy

9

at will, in combination with the discrepancy in dates, severe contradictions in light of White's affidavit, does not give this court any basis to conclude that what defendant has presented for arbitrability review is a 2005, valid arbitration agreement, binding on plaintiff.

In sum, because defendant BSH has failed to demonstrate an enforceable arbitration agreement, the court need not reach the issue of whether any arbitration agreement applies to the instant dispute.

## CONCLUSION

For the reasons stated herein, defendant BSH's motion to compel arbitration and stay proceedings (DE 13) is DENIED. Defendant BSH's request for fees is DENIED. The court's July 16, 2015, stay is lifted, and, defendant BSH may file an answer or other response within **14 days** of entry of this order.

SO ORDERED, this the 14th day of January, 2016.

LOUISE W. FLANAGAN
United States District Judge