IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-103-FL

| | | |
|---|---|---|
| CARL E. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| BSH HOME APPLIANCES CORP.; BLUE | ) | |
| ARBOR, INC.; and TESI SCREENING, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on motion of defendant BSH Home Appliances Corp.

("BSH") to reconsider the court's January 14, 2016, order denying defendant BSH's motion to

compel arbitration.[1] (DE 26). For the reasons that follow, defendant's motion for reconsideration

is granted. However, upon reconsideration, defendant BSH's motion to compel arbitration again

is denied without prejudice.

## BACKGROUND

Plaintiff, who is African-American, was employed by defendant BSH until some time in

2008. In 2005, during the course of plaintiff's employment, he filed suit against defendant BSH

alleging racial discrimination. That case was resolved through settlement, and plaintiff continued

his work until such time as he voluntarily left defendant BSH in 2008. In 2013, plaintiff applied for

---

[1] Defendants Blue Arbor, Inc. and TESI Screening, Inc. did not participate in defendant BSH's motion to compel arbitration. They also do not join in defendant BSH's motion to reconsider.

a position with defendant BSH, the same position he held prior to 2008. Defendant BSH refused to hire plaintiff, citing as its reason plaintiff's 2005 law suit.

Plaintiff filed a pro se complaint in this matter on June 15, 2015. Plaintiff asserts a single claim for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., arising out of defendant BSH's alleged refusal to rehire him as a result of his 2005 law suit. On July 16, 2015, defendant BSH filed a motion to compel arbitration. Appended to that motion was a signature page, showing plaintiff's signature confirming receipt of an employee handbook (the "signature page") (DE 14-1); several pages from an employee handbook (the "handbook") (DE 14-2 at 1-2), which defendant BSH suggests was the same handbook received by plaintiff and referenced on the signature page, and which incorporates as an addendum defendant BSH's "Dispute Resolution" policy (the "Arbitration Agreement") (DE 14-2 at 3-7); and the affidavit of defendant's human resources manager, Cynthia White (the "White Affidavit") (DE 14-3), attesting to the veracity of the signature page, handbook, and Arbitration Agreement.

As is relevant here, the handbook expressly incorporates the Arbitration Agreement. The Arbitration Agreement, in turn, provides for mandatory arbitration of "all claims and disputes a current or former employee within the United States might have arising out of the employee's employment or termination, which are not [otherwise resolved]." (DE 14-2, 4). The Arbitration Agreement further states that all arbitrations will be conducted pursuant to the rules of the American Arbitration Association ("AAA"). (Id., 5).

Plaintiff disputes the propriety of arbitration, arguing that defendant's evidence fails to establish his receipt of the handbook submitted by defendant BSH, as well as the Arbitration Agreement, and that, in any case, his cause of action does not fall within the purview of the

Arbitration Agreement because it does not arise out of his employment, but, rather, arises out of his application for employment.

The court entered order denying defendant BSH's motion to compel on January 14, 2016. The court first held that the parties had not clearly and unmistakably committed to the arbitrator the "gateway" question of arbitrability–that is, questions bearing on the validity and scope of the Arbitration Agreement. In addition, the court held that the Arbitration Agreement was unenforceable because defendant BSH's evidence did not show plaintiff had actual knowledge of the terms of the Arbitration Agreement.

On January 28, 2016, defendant BSH filed a motion for reconsideration. On February 2, 2016, defendant filed the instant, superceding motion for reconsideration. Plaintiff has not had the opportunity to respond; however, the court deems a response unnecessary as, for the reasons explained below, defendant's motion to compel remains unavailing.

## COURT'S DISCUSSION

A.     Standard of Review

Unless certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Assoc. v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir.2003). "The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and

3

that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." Saint Annes Dev. Co. v. Trabich, 443 F. App'x 829, 832 (4th Cir. 2011) (quoting American Canoe, 326 F.3d at 514–15)); see also Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1473 (4th Cir.1991) (stating that interlocutory orders "are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires").

"[D]octrines such as law of the case . . . have evolved as a means of guiding that discretion." Am. Canoe Ass'n, 326 F.3d at 515 (citing Sejman v. Warner–Lambert Co., 845 F.2d 66, 69 (4th Cir.1988)). According to the law of the case doctrine, "earlier decisions of a court become law of the case and must be followed unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" Am. Canoe Ass'n, 326 F.3d at 515 (quoting Sejman, 845 F.2d at 69).

B.     Analysis

Defendant BSH argues that the court (1) improperly determined that the parties had not committed questions of arbitrability to the arbitrator, (2) failed to recognize pertinent case law compelling the conclusion that the Arbitration Agreement be enforced by its terms, and (3) improperly assessed the evidence submitted in support of defendant's motion to compel. Reconsideration is proper because the court utilized an improper legal framework in analyzing defendant BSH's motion to compel arbitration. However, the revised legal framework does not alter the court's holding, rejecting defendant BSH's motion to compel.

1. Legal Principles

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).[2]  Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, reflects this fundamental principle. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010). Section 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The statute embodies a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

Arbitration agreements generally do not empower the arbitrator to decide "questions of arbitrability." See Peabody Holding Co v. United Mine Workers of Am., 665 F.3d 96, 102–03 (4th Cir. 2012). A "question of arbitrability" is a substantive, legal question as to the scope or validity of the arbitration agreement. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942–45 (1995); AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). And such questions typically are "issue[s] for judicial determination." AT&T, 475 U.S. at 649. However, where the parties clearly and unmistakably evidence their intent to have matters of arbitrability referred to the arbitrator, the court must honor the contract. See First Options, 514 U.S. at 944; see also Jackson, 561 U.S. at 69 n.1.

---

[2] Citations in the analysis are without any alterations or internal quotations, unless otherwise noted.

Where there is a "clear and unmistakable" manifestation of intent to delegate questions of arbitrability to the arbitrator, a so-called "delegation clause," those agreements themselves are to be viewed as separate, antecedent arbitration agreements. Jackson, 561 U.S. at 68–70. When an arbitration agreement containing a valid delegation clause is challenged, the validity of the arbitration agreement itself is a matter for the arbitrator. See id. at 71–72. However, that does not mean that delegation clauses are inviolate. To the contrary, a party may challenge the validity of a delegation clause in court, and, if the delegation clause is held invalid, challenge the arbitration agreement in turn. See Jackson, 561 U.S. at 71–72; Warrior & Gulf, 363 U.S. at 582.

2.      Application

As an initial matter, reconsideration is warranted with respect to the analytical framework employed in ruling on defendant BSH's motion to compel arbitration. Where an arbitration agreement refers to the AAA rules as here, which rules vest in the arbitrator the power to determine its own jurisdiction, that reference properly is treated as a delegation clause and, if that delegation clause is valid, questions as to the validity of the arbitration agreement are reserved for the arbitrator. See, e.g., Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases). However, where, as here, there is also a dispute as to the validity of the delegation clause, the court must determine that antecedent issue. See Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); Gateway Coal Co. v. United Mine Workers of Am., 414 U.S. 368, 374 (1974) ("The law compels a party to submit his grievances to arbitration only if he has contracted to do so.").

On that issue, defendant's evidence is sorely lacking in several key respects. First, the handbook submitted to the court is undated and, thus, it is impossible to determine whether the handbook was, in fact, the same version of the handbook in effect on June 23, 2005, when plaintiff signed the signature page. Although defendant points in its briefing to the fact that an automatic date stamp was added at the time of printing of the handbook in 2015, this automatic date stamp does not provide any information as to the actual dates on which this handbook version was in effect.

Second, although the Arbitration Agreement is dated June 1, 2005, approximately three weeks before plaintiff executed the signature form, that fact alone is not sufficient to prove that the delegation clause was incorporated into the copy of the handbook that plaintiff received prior to signing the signature page. While the handbook and Arbitration Agreement were submitted to the court as a single document, there is no indication that they both were in effect as of June 23, 2005.

Third, and finally, while the White Affidavit establishes the veracity of the signature page, it fails to indicate that the handbook referenced by the signature page is identical to the handbook referencing the Arbitration Agreement, submitted at docket entry 14-2. In particular, the White Affidavit states that docket entries 14-1 and 14-2 are "[plaintiff's] signed [signature page] and the [Arbitration Agreement]," respectively. (White Aff. ¶6). It does not aver that docket entry 14-2 represents a true and correct copy of the handbook and Arbitration Agreement that plaintiff received at or before the time he executed the signature page. Thus, the court cannot infer that plaintiff ever had an opportunity to review the delegation clause.

Defendant BSH disputes this conclusion and argues that plaintiff admits having knowledge of the delegation clause. Defendant directs the court to plaintiff's response in opposition to

defendant's motion to compel arbitration, where plaintiff states "The [delegation clause] that the defendant submitted to the court was not a part of the handbook when I worked for the defendant. I am informed and believe that this document was added to the handbook later." (Pl.'s Resp., DE 17, 1). However, plaintiff's admitted knowledge of the delegation clause's existence is an insufficient basis to find plaintiff agreed to be bound by its terms.

The delegation clause must be a binding contract before the court can order the parties to arbitrate the validity and scope of the Arbitration Agreement. See Lorenzo v. Prime Commc'ns, L.P., 806 F.3d 777, 781 (4th Cir. 2015). And the effect of the delegation clause "is resolved by application of state contract law." Id. "North Carolina contract law, like that of most states, requires that the parties assent to the same thing in the same sense, and their minds meet." Id. (citing Normile v. Miller, 313 N.C. 98 (1985)). Generally, a plaintiff's "acknowledgment that []he received the [delegation clause] and h[is] continued work after reviewing its . . . terms" creates implied assent to the terms of that clause under North Carolina law. See id. at 781–82 (citing Hightower v. GMRI, Inc., 272 F.3d 239, 242–43 (2001)).

In Lorenzo, the Fourth Circuit found that the plaintiff had impliedly consented to the terms of an arbitration agreement when she continued to work after having the opportunity to review the agreement's terms. Id. at 781–82. Similarly, in Hightower, the plaintiff actually received the materials, had an opportunity to review them, and voluntarily continued working. Hightower, 272 F.3d at 242–43. Finally, in Howard v. Oakwood Homes, 134 N.C. App. 116 (1999), the North Carolina Court of Appeals held that a plaintiff who continued to work after receiving actual notice of the terms of the arbitration agreement was bound by its terms. Id. at 120–22. This case presents a different situation. Plaintiff argues that he never received actual notice of the delegation clause

8

and its terms. Although plaintiff suggests he is aware of the delegation clause generally, awareness of the delegation clause is not synonymous with the opportunity to review its terms. Although plaintiff's assertion could be overcome with proper evidence, the White Affidavit, in its current form, is insufficient to support a finding otherwise. Nowhere does it actually state that the handbook portion of docket entry 14-2 is the same handbook of which plaintiff acknowledged receipt on the signature form.

In any event, defendant BSH also contends that plaintiff's assertion that "the [version of the] defendant's handbook [I received] sa[id] that it [wa]s not a contract between the parties," amounts to a concession by plaintiff that plaintiff has reviewed the handbook and, therefore, should be bound by its terms. (Pl.'s Resp., 1). Defendant BSH overstates the importance of plaintiff's assertion. Certainly plaintiff's response proves that he had seen a handbook, a fact also proved by the signature page. (See DE 14-1). However, neither plaintiff's assertion nor the signature page demonstrate that plaintiff ever reviewed the version of the handbook submitted to the court at docket entry 14-2. Moreover, although that handbook contains neighboring provisions incorporating the Arbitration Agreement and disclaiming any contractual import, (see DE 14-2), the court declines defendant BSH's invitation to infer plaintiff's knowledge as to the provision incorporating the Arbitration Agreement, where other versions of defendant BSH's employee handbook also could have contained similar disclaimer language.

Accordingly, the court cannot enforce the delegation clause on the record before it. Because the delegation clause is not enforceable, the court may determine the validity of the Arbitration Agreement itself. For all the reasons stated above, the court also declines to enforce the Arbitration Agreement. This result is identical to the result of the court's January 14, 2016, order.

9

In sum, defendant BSH's motion for reconsideration is granted; however, upon reconsideration, defendant's motion to compel arbitration must again be denied. Although the analytical framework of the court's January 14, 2016, order was erroneous, where inclusion of the AAA rules in an arbitration agreement acts as a delegation clause, that error was of no moment because defendant cannot prove the validity of that delegation clause. The result under either analysis is the same.

## CONCLUSION

For the reasons stated herein, defendant BSH's motion for reconsideration (DE 26) is GRANTED. The court AMENDS its order dated January 14, 2016, to reflect foregoing analysis. However, defendant's motion to compel arbitration is DENIED WITHOUT PREJUDICE in light of the evidentiary defects noted herein.

SO ORDERED, this the 10th day of February, 2016.

LOUISE W. FLANAGAN
United States District Judge