IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:15-CV-103-FL

| | |
|---|---|
| CARL E. DAVIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)                                                             **ORDER**<br>BSH HOME APPLIANCES CORP.; )<br>BLUE ARBOR, INC.; and TESI )<br>SCREENING, INC., )<br>)<br>Defendants. ) | |

This matter is before the court on the renewed motion of defendant BSH Home Appliances Corp. ("BSH") to compel arbitration and stay trial, made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4. (DE 31). The issues raised have been briefed fully and are ripe for ruling. For the reasons that follow, the court grants defendant BSH's motion.

### BACKGROUND

A. Plaintiff's Employment History

Defendant BSH employed plaintiff, who is African-American, from August 11, 2003, until June 15, 2008. On July 28, 2005, defendant BSH terminated plaintiff's employment for reasons, it alleges, related to a rules infraction. Following plaintiff's 2005 termination, plaintiff filed a claim of discrimination with the Equal Employment Opportunity Commission, wherein he alleged that his termination was racially motivated. Subsequently, plaintiff and defendant settled his claim of discrimination, and defendant re-hired plaintiff with seniority retroactive to August 11, 2003, plaintiff's original hire date.

B.  Defendant BSH's Dispute Resolution Policy

Beginning in 2000, defendant BSH promulgated a "dispute resolution policy," (the "2000 DRP"), which establishes a multi-step procedure for resolving employee grievances arising out of or relating to the employee's employment. (See 2000 DRP, DE 32, 16–19). At the time, defendant BSH gave all current employees a copy of the 2000 DRP and required them to agree to its terms as a condition of continued employment. Defendant BSH thereafter provided each newly-hired employee with a copy of the 2000 DRP, required each new employee to agree to the terms of the 2000 DRP as a condition of employment, and also required each new employee to sign a signature form acknowledging receipt of the 2000 DRP. Defendant BSH provided plaintiff with the 2000 DRP on the day he was hired, August 11, 2003.

As relevant here, the 2000 DRP contains an arbitration provision. Within that larger arbitration provision, the 2000 DRP also explicitly incorporates the rules of the American Arbitration Association ("AAA"), and provides that any arbitration will occur before the AAA.

In June 2005, defendant BSH implemented an "employee handbook." That document incorporates a number of previously free-standing company policies, including a revised version of the 2000 DRP. (See Revised DRP, DE 32, 11–14). The handbook itself contains only a brief summary of the arbitration process.

> Differences occasionally arise between the Company and a current or former associate. In most instances, these differences have been resolved through the Company's Open Door Policy or through informal discussions.
>
> In those rare instances where informal discussions and the Company's internal procedures do not produce a satisfactory result, litigation has been the only recourse to resolve the matter. Unfortunately, the litigation process is costly to all parties and is most time consuming. The Company believes there is a better and more efficient method to resolve those disputes that cannot be resolved informally. That method

2

> is a two-step dispute resolution mechanism of mediation and arbitration, which is independent, fair, and equitable to all parties.
>
> The Dispute Resolution Policy provides associates with a clearly defined procedure for resolving job-related problems that cannot be settled by using an open door policy. The Dispute Resolution Policy avoids the undesirable litigation characteristics of high cost and delay for both the associate and the Company, yet retains the elements of impartiality and fairness that are essential for any equitable alternative dispute resolution procedure.
>
> The Dispute Resolution Policy covers all non-union full-time and part-time exempt and non-exempt associates and managers, without exception.
>
> This Policy does not in any way alter the "at will" status of the associate's employment. Nothing in this Policy limits the associate's right to resign from the Company, or the Company's right to terminate the associate's employment for any reason at any time. See Addendum I for the complete policy.

(DE 32, 8–9). "Addendum I" contains the revised DRP.

The revised DRP is substantively identical to the 2000 DRP. For example, defendant BSH, through the terms of the revised DRP, still requires aggrieved employees to submit a large number of disputes to arbitration before the AAA, and the revised DRP still incorporates the AAA rules. In fact, the revised DRP changes the 2000 DRP in only one way, concerning the allocation of arbitration expenses between the parties. (Compare, 2000 DRP, DE 32, 17, with Revised DRP, DE 32, 12).

Following the June 2005 implementation of its employee handbook, defendant BSH promulgated the handbook and all related documents to its then-current employees, who were required to sign an acknowledgment form, verifying receipt of the handbook. (See Acknowledgment Form, DE 32, 7). Plaintiff signed the acknowledgment form on June 23, 2005.

C.  The Instant Dispute

In July 2013, plaintiff submitted an application to defendant BSH for the same position he held prior to 2008. Defendant BSH informed plaintiff that he had to apply for the position through defendant TESI, Inc., a temporary staffing agency now known as defendant Blue Arbor, Inc. (collectively "defendant TESI"). Plaintiff thereafter submitted his application to defendant TESI. Later, in August 2013, defendant TESI informed plaintiff that defendant BSH had rejected his application, allegedly citing as its reason plaintiff's 2005 claim of discrimination.

On June 15, 2015, plaintiff, proceeding pro se, filed suit against defendant BSH and defendant TESI, alleging one count of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. On July 16, 2015, defendant BSH filed its first motion to compel arbitration, pursuant to the FAA, 9 U.S.C. § 4. Defendant BSH argued that plaintiff was required to submit the instant dispute to arbitration before the AAA by virtue of the revised DRP. In support of its argument, defendant BSH submitted a copy of the signature page executed by plaintiff, wherein he acknowledged receipt of the employee handbook; a partial copy of the employee handbook; and a copy of the revised DRP. (See DE 14-1 & 14-2). In addition, defendant BSH submitted the declaration of its employee records custodian, which stated that the signature page bore plaintiff's signature, and that the employee handbook and revised DRP were copies of that referenced on the signature page. (See DE 14-3). In response to defendant BSH's motion, plaintiff contended that he had never seen the revised DRP before.

The court denied defendant BSH's motion by orders entered January 14, and February 10, 2016. See Davis v. BSH Home Appliances Corp., No. 4:15-CV-103-FL, 2016 WL 183482 (E.D.N.C. Jan. 14, 2016), as amended 2016 WL 589686 (E.D.N.C. Feb. 10, 2016). The court first narrowed the issue, holding that the revised DRP's explicit reference to the AAA rules operated as

4

a so-called "delegation clause," the purpose of which is to delegate the issue of "arbitrability" to the arbitrator. Put another way, the court held that it could not address the validity of the revised DRP if the delegation clause was a valid contract, but, rather, that those issues properly were reserved for the arbitrator. However, upon a review of defendant's evidence, the court denied the motion to compel. In particular, the court held that defendant's evidence, in the face of plaintiff's objection, failed to establish that plaintiff previously had agreed to the terms of the "delegation clause." Then, turning its attention to the revised DRP as a whole, the court similarly held that defendant's evidence failed to prove that plaintiff previously had agreed to the revised DRP.

Following the court's denial of its first motion, defendant BSH filed the instant motion on February 24, 2016. The instant motion essentially revisits the arguments raised in support of defendant BSH's first motion to compel arbitration. However, defendant BSH relies now on a more robust evidentiary proffer. In particular, defendant BSH puts forward for the first time evidence that plaintiff signed the 2000 DRP when he was first hired by defendant BSH on August 11, 2003. In addition, defendant BSH puts forward evidence to suggest that it supplied each of its then-current employees with a copy of the employee handbook, including the revised DRP, in June 2005. In support of the instant motion, defendant BSH relies on the declaration of John Wilson, defendant BSH's human resources manager, (Wilson Decl., DE 32, 1–6), as well as various exhibits, including the 2000 DRP; the revised DRP; and two documents, signed by plaintiff, evidencing his receipt of both the 2000 and revised DRP.

5

On March 22, 2016, plaintiff, now represented by counsel, filed his response in opposition to the instant motion.[1] Plaintiff principally attacks the validity of any purported contract between defendant BSH and himself created by either the 2000 or revised DRP. In particular, plaintiff argues that when he was hired in 2003, a number of documents were provided to him in a piecemeal fashion, and, accordingly, that he does not recall seeing the 2000 DRP. Moreover, plaintiff argues that he never received a complete copy of the revised DRP and that the revised DRP was not provided contemporaneously with the handbook. In any event, plaintiff also argues that the instant dispute falls outside the scope of either DRP, where it does not arise from or relate to his previous employment, and that both DRPs should be rewritten by the court to add a limitations period, which, plaintiff maintains, has expired. To support his opposition, plaintiff relies on his own declaration.[2] (Pl.'s Decl., DE 38). Therein, plaintiff contends that he never before has seen the documents relied on by defendant in support of its motion to compel arbitration, and, in particular, the revised DRP. (Id. ¶¶14–15). In addition, plaintiff alleges that the documentation proffered by defendant BSH has been falsified. (Id. ¶¶8, 12).

**COURT'S DISCUSSION**

A.  Motion to Compel Arbitration: 9 U.S.C. § 4

---

[1] Plaintiff's response in opposition was filed one day out of time, with no motion for extension of time having been filed prior to the response deadline, March 21, 2016. Plaintiff now moves the court for permission to file his response out of time. (DE 36). In support of his motion, plaintiff cites the good cause standard. See generally Fed. R. Civ. P. 6(b)(1). Plaintiff apparently overlooks the fact that the court may not grant a motion extension of time filed after the response deadline has lapsed, except upon a showing of excusable neglect. See Fed. R. Civ. P. 6(b)(1)(B). Nevertheless, on the basis of plaintiff's factual proffer, the court finds such excusable neglect exists here and grants the motion to file out of time. (DE 36).

[2] Which declaration, inexplicably, was filed almost two months after plaintiff's response in opposition.

The FAA creates "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate," and embodies a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 & n.32 (1983). To that end, the statute allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration . . . [to] petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order [compelling arbitration as provided for in the agreement]." 9 U.S.C. § 4.

When faced with a motion to compel arbitration, the court does not review the contract as a whole. Rather, the court reviews the arbitration agreement as if it were a free-standing contract, with an eye toward two gateway issues. Buckeye Check Cashing, Inc. v. Cardenga, 546 U.S. 440, 444–46 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83–84 (2002) (observing that courts resolve only "gateway disputes," such as "questions of arbitrability"). First, the court must determine whether "a valid agreement to arbitrate exists between the parties." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). This inquiry is not confined to defects in contract formation, but also includes "such grounds as exist at law or in equity for the revocation of any contract." Id. (quoting 9 U.S.C. § 2); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627 (1985). Where the court concludes there is a contract, the court next asks whether "the specific dispute falls within the substantive scope of that agreement." Id. In short form, the court engages in the two-step analysis to determine whether a particular dispute is "arbitrable." See Hooters, 173 F.3d at 938; see also First

7

Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942–45 (1995); AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

In certain cases, however, the parties' contract divests the court of its power to determine the threshold issue of arbitrability. See First Options, 514 U.S. at 944; see also Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69 n.1 (2010). Where there is "clea[r] and unmistakabl[e]" evidence that the parties agreed to arbitrate arbitrability, questions as to the validity and scope of the arbitration agreement properly are reserved for the arbitrator. First Options, 514 U.S. at 944 (alterations in original); accord AT&T Techs., 475 U.S. at 649; Carson v. Giant Food, Inc., 175 F.3d 325, 329 (4th Cir. 1999). Such clear and unmistakable evidence exists where, as here, the parties' contract incorporates by reference the rules of an arbitration organization, like, for example, the AAA, and where such rules vest in the arbitrator the power to determine its jurisdiction. See, e.g., Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (9th Cir. 2013) (so holding; collecting cases). But see Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 777 & n.1, 779–81 (10th Cir. 1998).

In any event, where the parties clearly and unmistakably delegate to the arbitrator the power to determine arbitrability, the court is to consider the so-called "delegation clause" as if it were a free-standing arbitration agreement. See Jackson, 561 U.S. at 68–69. A number of consequences flow from that construction. For one, attacks on the larger arbitration agreement are not cognizable. See id. at 71–72 & n.3 ("In this case, the underlying contract is itself an arbitration agreement. But that makes no difference."); Buckeye, 546 U.S. at 444–45; Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967). Rather, the arbitration agreement is inviolate, at least in

8

the district court, while the delegation clause, a theoretically separate arbitration agreement, still stands. See Jackson, 561 U.S. at 68–72.

Defendant BSH's evidence satisfactorily demonstrates that plaintiff agreed to arbitrate the issue of arbitrability. The lone issue before the court is whether the delegation clause is a valid contract. See 9 U.S.C. § 2; Lorenzo v. Prime Commc'ns, L.P., 806 F.3d 777, 781 (4th Cir. 2015). That issue is resolved by reference to state law. See id. (citing Normile v. Miller, 313 N.C. 98 (1985)). Under North Carolina law, "continuing employment after learning of the existence of [an arbitration agreement] constitutes an employee's agreement to be bound by [that] agreement." Hightower v. GMRI, Inc., 272 F.3d 239, 242–43 (4th Cir. 2001); accord Lorenzo, 806 F.3d at 781–82.

Defendant BSH has demonstrated plaintiff's implied consent to the terms of the delegation clause. Both the 2000 and revised DRP contain an arbitration agreement and a delegation clause, in the form of a reference to the AAA rules. In 2003 and 2005, respectively, plaintiff received a copy of the 2000 DRP and revised DRP. (See Wilson Decl., DE 32, 3–4 ¶9). Thereafter, plaintiff signed a form acknowledging his receipt of the relevant materials. For example, in 2003, plaintiff signed a form directly attesting to the fact that he received the 2000 DRP. (DE 32, 15). In 2005, at the time the revised DRP was promulgated, plaintiff signed an acknowledgment form, wherein he acknowledged receipt of the employee handbook. (Id., 7). The employee handbook specifically refers to the revised DRP and directs the reader to "Addendum I," which contains the revised DRP, including the delegation clause. At a minimum, defendant has demonstrated that plaintiff was aware of the delegation clause, had the opportunity to read the delegation clause, and nevertheless

9

continued his employment.  Under North Carolina law, plaintiff manifested his assent to the terms of the delegation clause.  See Hightower, 272 F.3d at 242–43.

Plaintiff contests this conclusion on a number of evidentiary grounds, none of which are persuasive.  First, plaintiff argues that he does not remember receiving the 2000 DRP when he was hired in 2003, because he received a number of documents in a piecemeal fashion.  (See Pl.'s Decl. ¶6).  This argument is irrelevant; simply because plaintiff does not remember now reviewing the 2000 DRP, specifically its delegation clause, it does not necessarily follow that plaintiff never consented to its terms.  Relatedly, plaintiff argues that he never "received a 2003 Addendum I with . . . loose pages."  (Id. ¶7).  This argument also is irrelevant, as it bears no relation to defendant BSH's proffered evidence.  The 2000 DRP was not contained in an "Addendum I."  (See DE 32, 16–19).  Nor does the signature page, signed by plaintiff on August 11, 2013, ever refer to such an "Addendum."  (See id., 15).

The court separately addresses plaintiff's contention that defendant BSH has "falsified" documents submitted to the court.  A motion to compel arbitration is akin to a motion for summary judgment.  See Chorley Enters. v. Dickey's Barbecue Rests., 807 F.3d 553, 563–64 (4th Cir. 2015); see also Oppenheimer & Co. v. Neidhart, 56 F.3d 352, 358 (2d Cir. 1995).  Therefore, to successfully contest a motion to compel, made under § 4, the party contesting the motion must provide "sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law."  Chorley, 807 F.3d at 564.  However, "[n]ot just any factual dispute will do."  Id.  Plaintiff's assertion of misconduct by defendant BSH is both very serious and baseless on the record before the court.  Accordingly, plaintiff's self-serving, unsupported accusations fail to create a meaningful dispute of fact.

10

Second, plaintiff argues that defendant's evidence fails to prove he assented to the 2000 DRP in 2003, where the copy of the 2000 DRP submitted by defendant contains a signature line, but is itself unsigned. (See DE 32, 19). Insofar as plaintiff' attacks the 2000 DRP's arbitration provision, the court need not address plaintiff's argument. See Jackson, 561 U.S. at 70–72. Moreover, to the extent plaintiff challenges the delegation clause, his argument is without merit. Under North Carolina law, "unless otherwise specified," acceptance of a contract "may be communicated by any means sufficient to manifest intent," including conduct. Exec. Leasing Assocs. v. Rowland, 30 N.C. App. 590, 592 (1976). The 2000 DRP does not make a signature on the document the exclusive means of acceptance. Rather, plaintiff's acceptance has been demonstrated by both his signature elsewhere, (see DE 32, 15), and his conduct. Hightower, 272 F.3d at 242–43.

Third, plaintiff argues that he never received a complete copy of the revised DRP at the time defendant BSH promulgated its employee handbook. In other words, plaintiff maintains he cannot be bound by the revised DRP where he did not review fully the material terms of the document. However, this argument is not properly before the court. See Jackson, 561 U.S. at 70–72. Nowhere does plaintiff argue that he did not receive and review the delegation clause itself. The delegation clause contained in both the 2000 and revised DRPs is a severable, stand-alone arbitration agreement. See Buckeye, 546 U.S. at 444–46. Plaintiff cannot challenge the contract in which the delegation clause is found, in this instance the revised DRP, so long as the delegation clause itself is valid. See Jackson, 561 U.S. at 70–72; Buckeye, 546 U.S. at 444–46.

In any case, plaintiff also denies that he received a "Handbook of Policies," referring to the 2005 employee handbook containing the revised DRP, but, rather, that he merely received a "Handbook of Benefits." (Pl.'s Decl. ¶10). Again, however, plaintiff fails to submit any evidence,

11

beyond his own self serving allegations, that there ever were two handbooks. Moreover, plaintiff's own brief suggests that there only was one handbook, which he refers to throughout as "the Employee Handbook." (See,e.g., Pl.'s Br., DE 36-1, 5) (emphasis added). In any case, insofar as plaintiff's argument challenges the validity of the delegation clause, the court already has determined that the 2000 DRP bound plaintiff to arbitration, and that the revised DRP was substantively identical. Accordingly, even if plaintiff has presented enough evidence to raise a genuine question of material fact, the court would hold that the revised DRP, as incorporated into any purported "Handbook of Benefits" represents a failed attempt at a modification of an already binding contract.

Apart from his evidentiary challenges, plaintiff also raises two legal challenges in opposition to defendant's motion. First, plaintiff argues that the underlying dispute falls outside the scope of the either the 2000 or revised DRP. Second, plaintiff argues that both the 2000 and revised DRPs have expired, and suggests that the court should strike both arbitration provisions for purposes of the instant litigation. Neither of these arguments are properly before the court, where plaintiff attacks the 2000 and revised DRPs' arbitration provisions at large, not their identical delegation clause. See Jackson, 561 U.S. at 70–72. Accordingly, the court need not address either.

In sum, defendant BSH's motion to compel arbitration must be granted. Nevertheless, although plaintiff and defendant BSH invite the court to compel defendant TESI to arbitration, the court declines that invitation where defendant TESI does not join in the instant motion, and defendant BSH did not request the court compel defendant TESI to arbitration in its opening brief.

B.      Motion to Stay Trial: 9 U.S.C. § 3

Defendant BSH also moves the court for a stay, pursuant to 9 U.S.C. § 3. If any suit brought in the district court is referred to arbitration, the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under . . . an [arbitration] agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "[T]he FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001); accord Hooters, 173 F.3d at 937 ("When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings."). Accordingly, the court will stay this case pending arbitration.

## CONCLUSION

Based on the foregoing, the court GRANTS plaintiff's motion to file out of time. (DE 36). In addition, the court GRANTS defendant BSH's motion to compel arbitration and stay the case. (DE 31). The court DIRECTS plaintiff to submit to the underlying employment matter, as well as any argument about the validity and scope of the 2000 or revised DRP, to arbitration, consistent with the terms of the parties' agreement. The court hereby STAYS this case as to all defendants pending resolution of the arbitration. The court DIRECTS plaintiff and defendant BSH to submit to the court a status update within 6 months of the date of entry of this order.

SO ORDERED, this the 18th day of May, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge