IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-103-FL

| | | |
|---|---|---|
| CARL E. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BLUE ARBOR, INC.; and TESI SCREENING, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' joint motion for summary judgment (DE 80). Plaintiff responded in opposition to the motion, and defendants replied. In this posture, the issues raised are ripe for ruling. For the reasons that follow, defendants' joint motion for summary judgment is granted.

## STATEMENT OF THE CASE

Plaintiff initiated this action on June 15, 2015, alleging defendants Blue Arbor, Inc. ("Blue Arbor"), TESI Screening, Inc. ("TESI Screening"), and BSH Home Appliances Corporation ("Bosch") unlawfully retaliated against him for engaged in protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a). Plaintiff seeks compensatory damages, punitive damages, costs, and reasonable attorney's fees.

Defendants Blue Arbor and TESI Screening filed their answer to plaintiff's complaint on July 8, 2015. On July 16, 2015, defendant Bosch filed a motion to compel arbitration, which was denied by the court on January 14, 2016. On motion by defendant Bosch, the court granted relief to defendant Bosch and allowed it to refile its motion to amend on February 10, 2016. Defendant

Bosch then filed an amended motion to compel arbitration and stay proceedings on February 24, 2016, which was granted by the court on May 18, 2016. The case remained stayed as to all defendants until July 11, 2017, when the court granted defendant Bosch's motion to confirm arbitrator's award and dismissed all plaintiff's claims against defendant Bosch.

On August 14, 2017, the court entered its case management order. On February 13, 2018, with leave of court, plaintiff filed his amended complaint against defendants Blue Arbor and TESI Screening (hereinafter "defendants"). Defendants answered the amended complaint on March 2, 2018. Discovery in this matter concluded on August 31, 2018.

On October 30, 2018, defendants timely filed the instant joint motion for summary judgment. Defendants argue that plaintiff cannot produce evidence that establishes a causal link between an adverse employment action and any purported discriminatory conduct; that defendant Blue Arbor knew of, or otherwise acquiesced in, discriminatory conduct; that defendants jointly employed plaintiff; that plaintiff was qualified for the employment sought with defendant Bosch; that defendants are employers subject to Title VII; or that liability for defendant Blue Arbor's acts or omissions could be imputed to defendant TESI Screening. Defendants also argue that they had legitimate, non-discriminatory reasons for why plaintiff was not offered a job with defendant Bosch.

In support of defendants' motion, defendants filed a statement of material facts (DE 82), as well as an appendix of exhibits, including: plaintiff's employment records from defendant Bosch ("Personnel Action Form" (DE 83-1); "2011 Settlement Agreement" (DE 83-2); "Termination Letter" (DE 83-3)); the affidavit of Sadie Catherine Bell ("Bell") and supporting attachments ("Bell Aff." (DE 83-4); "TESI, Inc. Articles of Incorporation" (DE 83-5); "TESI, Inc. Articles of Amendment" (DE 83-6); "TESI Services, Inc. Articles of Incorporation (DE 83-7); "TESI Staffing

2

Articles of Amendment" (DE 83-8); "Davis Log Entries" (DE 83-9); "Sample Doc BSH Availability" (DE 83-10); "Davis Blue Arbor Application" (DE 83-11); "Labor Order for Kin-Ro Construction" (DE 83-12); "Labor Order for Drahtzug Stein" (DE 83-13); "Labor Order for Chatsworth Products, Inc." (DE 83-14); "2013 EEOC Charge" (DE 83-15)); and excerpts from plaintiff's deposition ("Davis Dep." (DE 83-16)).

On November 20, 2018, plaintiff filed his response in opposition, arguing that defendants are an employment agency not subject to the fifteen employee requirement of Title VII; that in any event defendants have more than fifteen employees; defendants are so intermingled that they should be treated as a single employer; and that several genuine issues of material fact preclude summary judgment.

In support of plaintiff's argument, he submits an opposing statement of material facts (DE 85), as well as an appendix of exhibits, including: plaintiff's affidavit and excerpts from his deposition ("Davis Aff." (DE 88-2); "Davis Dep." (DE 88-11)); transcripts of plaintiff's phone conversations with Bell and Kathy Kline ("Kline") ("July 26, 2013 Phone Call" (DE 88-3); "August 27, 2013 Phone Call" (DE 88-4); "August 29, 2013" (DE 88-5)); portions of defendants' responses to requests for production ("Requests for Production" (DE 88-6)); copies of redacted labor orders ("Labor Orders" (DE 88-7)); records from the EEOC investigation of plaintiff's complaint ("April 29, 2014 Letter" (DE 88-8); "EEOC Investigator Notes" (DE 88-10, 88-19)); defendant Bosch's rehiring policy ("Rehire Policy" (DE 88-9)); excerpts from Bell's deposition ("Bell Dep." (DE 88-12)); resources providing a corporate profile of defendants ("Blue Arbor Corp. Report" (DE 88-13); "TESI Screening Corp. Report" (DE 88-14); "Blue Arbor Hoovers Report" (DE 88-15); "Reference USA Blue Arbor Description" (DE 88-16); "Blue Arbor Web Pages" (DE 88-17)); plaintiff's

termination letter from defendant Bosch ("Termination Letter" (DE 88-18)); a chart outlining communications between plaintiff and Bell ("Communication Chart" (DE 88-20)); and a doctor's letter authorizing plaintiff to work without physical limitation ("Jan. 22, 2013 Doctors' Letter" (DE 88-22)).

Defendants replied, reasserting their argument that Bell had no knowledge of defendant Bosch's alleged misconduct, and therefore they could not be held liable for such conduct.

## STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts for purposes of the instant motion may be summarized as follows.

A.     Plaintiff's Employment With Defendant Bosch

On August 11, 2003, defendant Bosch hired plaintiff as a setter in its fabrication department. (Statement of Facts (DE 82, 85) ¶ 28). Plaintiff continued to work in this position until 2005, at which point he was terminated for allegedly failing to return to work from jury duty. (Statement of Facts (DE 82, 85) ¶ 29). Plaintiff, who believed the stated reason to be pretext, filed a charge of discrimination with the EEOC ("2006 EEOC Charge"), alleging that his termination was a form of racially motivated discrimination in violation of Title VII. (Statement of Facts (DE 82, 85) ¶ 30; Davis Dep. (DE 83-16) 47:11-15). Plaintiff asserted that he was subpoenaed for two separate criminal cases, that he was required to take personal leave time in one of the two actions because he was a defendant, and that defendant Bosch's Human Resource Director Chuck Dail altered his vacation/leave request form by erasing his supervisor's signature approving time off. (Statement of Facts (DE 82, 85) ¶¶ 33-35; see Davis Dep. (DE 83-16) 48:20-50:18, 51:13-52:5). Ultimately, the 2006 EEOC Charge was resolved when defendant Bosch agreed to reinstate plaintiff and provide him with back pay for the time spent out of work. (Statement of Facts (DE 82, 85) ¶ 36; Davis Dep.

4

(DE 83-16) 55:12-25). Plaintiff testified that, as part of the settlement agreement, he executed a confidentiality agreement prohibiting him from discussing the 2006 EEOC Charge with anyone, including defendant Blue Arbor. (See Statement of Facts (DE 82, 85); Davis Dep. (DE 83-16) 87:20-88:7)).

On December 13, 2007, plaintiff sustained a laceration to his right forearm while working with a piece of sheet metal at defendant Bosch. (See Statement of Facts (DE 82, 85) ¶¶ 38, 41; 2011 Settlement Agreement (DE 83-2) at 1). Defendant Bosch and its insurance carrier, CNA Insurance Company, provided plaintiff with workers' compensation benefits. (See Statement of Facts (DE 82, 85) ¶ 39; 2011 Settlement Agreement (DE 83-2) at 7). On March 12, 2008, plaintiff was permitted to return to light-duty, part-time, desk work with no use of the right upper extremity, which defendant Bosch could not accommodate. (See Statement of Facts (DE 82, 85) ¶ 40; 2011 Settlement Agreement (DE 83-2) at 2; Davis Dep. (DE 83-16) 65:15-23). On September 18, 2008, defendant Bosch advised plaintiff that he exceeded the 6 month disability leave permitted by company policy, and as a result his employment was terminated. (Statement of Facts (DE 82, 85) ¶ 41; Termination Letter (DE 83-3, 88-18)). Plaintiff never returned to work for defendant Bosch, but continued to receive workers' compensation benefits until November 18, 2011, when he settled the claim for $290,000.00. (Statement of Facts (DE 82, 85) ¶ 42; 2011 Settlement Agreement (DE 83-2) at 11).

B.   Plaintiff Applies for Work With Defendants Blue Arbor and TESI Screening

Defendants Blue Arbor and TESI Screening are North Carolina companies that collectively provide employee placement and screening services. (See Statement of Facts (DE 82, 85) ¶¶ 1-6). The companies have the same corporate officers, and share the same office address and telephone

5

numbers in New Bern. (See Blue Arbor Corp. Report (DE 88-13) at 1-2; TESI Screening Corp. Report (DE 88-14) at 1-2). Defendant Blue Arbor advertises that it provides screening and testing services and that it manages TESI Screening. (See Blue Arbor Web Pages (DE 88-17) at 1-3, 6).

Defendant Blue Arbor's New Bern office receives between 30-50 employment seeking candidates each week. (Statement of Facts (DE 82, 85) ¶ 7; Bell Aff. (DE 83-4) ¶ 12). When an employment candidate approaches defendant Blue Arbor, he completes an application, takes a skills assessment, and is interviewed by a staffing specialist. (Statement of Facts (DE 82, 85) ¶ 7; Bell Aff. (DE 83-4) ¶ 13). During the interview, each candidate advises defendant Blue Arbor as to what types of assignments he is interested in, the hours he is available, whether he is capable of part-time and/or full-time assignments, and whether he will accept temporary and/or temporary-to-hire assignments. (Statement of Facts (DE 82, 85) ¶ 8; Bell Aff. (DE 83-4) ¶ 13). After preliminary evaluations are complete, staffing specialists instruct candidates to call in weekly to inform defendant Blue Arbor if they are available and looking for work. (Statement of Facts (DE 82, 85) ¶ 9; Bell Aff. (DE 83-4) ¶ 14).

Each week, defendant Blue Arbor cross-references the list of available candidates with the employment assignments provided by the corporate clients. (Statement of Facts (DE 82, 85) ¶ 12; Bell. Aff. (DE 83-4) ¶ 17). Once qualified candidates are identified, they are contacted regarding the matching assignments. (Statement of Facts (DE 82, 85) ¶ 13; Bell Aff. (DE 83-4) ¶ 17). Once a candidate accepts an offered assignment, he completes the requisite tax forms, completes any necessary screening, and is given work instructions. (Statement of Facts (DE 82, 85) ¶ 14; Bell Aff. (DE 83-4) ¶ 18). If a candidate rejects an assignment, defendant Blue Arbor tries to determine if the candidate's employment requirements have changed and instructs him or her to call back.

6

(Statement of Facts (DE 82, 85) ¶¶ 15-17; Bell Aff. (DE 83-4) ¶ 19). Defendant Bosch routinely looks to defendant Blue Arbor for qualified candidates to fill its open production/manufacturing positions, and requires any candidate be willing to work both first and second shift to receive consideration. (Statement of Facts (DE 82, 85) ¶ 23; Bell Aff. (DE 83-4) ¶¶ 23-24).

In December 2012, plaintiff submitted applications to several temporary staffing agencies, including defendant Blue Arbor. (Statement of Facts (DE 82, 85) ¶ 43; Davis Dep. (DE 83-16) 71:6-7). Plaintiff indicated in his initial application to defendant Blue Arbor that he was only interested in manufacturing or sales positions, was only available for first shift work, and would only consider temporary-to-hire assignments. (See Statement of Facts (DE 82, 85) ¶ 45; Davis Dep. (DE 83-16) 71:14-16); Bell Aff. (DE 83-4) ¶ 26).

Plaintiff further initially advised he had a workers' compensation injury resulting in several physical restrictions, but that he could contact his doctor to get a release, and that he could not work second or third shift because he was still treating for his injury and had to care for his disabled wife. (See Statement of Facts (DE 82, 85) ¶¶ 46-47; Bell Aff. (DE 83-4) ¶¶ 26-27). Plaintiff also advised he had previously worked for defendant Bosch but was terminated based on circumstances arising out of his worker's compensation claim. (Statement of Facts (DE 82, 85) ¶ 48; Davis Dep. (DE 83-16) 71:11-13; Bell Aff. (DE 83-4) ¶ 26). At no point did plaintiff discuss the 2006 EEOC Charge with Bell or anybody else working for defendants. (See Statement of Facts (DE 82, 85) ¶ 73; Davis Dep. (DE 83-16) 87:7-88:7).

Plaintiff's interview with defendant Blue Arbor was conducted by Bell, who at all times relevant to the complaint was defendant Blue Arbor's staffing supervisor and also was plaintiff's point of contact with defendant Blue Arbor. (See Statement of Facts (DE 82, 85) ¶¶ 25-26; Bell Aff.

7

(DE 83-4) ¶ 28; Davis Dep. (DE 83-16) 77:2-15, 102:3-5). Bell advised that plaintiff's inability to work second shift automatically disqualified him from possible employment opportunities with defendant Bosch, but plaintiff reiterated he was only available for first shift work. (Statement of Facts (DE 82, 85) ¶ 49; Bell Aff. (DE 83-4) ¶ 28).

On January 24, 2013, plaintiff contacted Bell and explained that he was interested in returning to defendant Bosch and would be willing to consider second shift work. (Statement of Facts (DE 82, 85) ¶ 51; Bell Aff. (DE 83-4) ¶ 30). Bell discussed plaintiff's request with defendant Bosch's Human Resources Officer Cynthia White ("White"), who advised that defendant Bosch was not interested in him returning but did not state the reason behind defendant Bosch's position at that time. (See Statement of Facts (DE 82, 85) ¶¶ 51-53; Bell Aff (DE 83-4) ¶¶ 31). At some point during late January or early February, John Wilson ("Wilson"), Human Resources Manager for defendant Bosch, was also told by Lindsey Finnell ("Finnell"), a supervisor at defendant Blue Arbor, that plaintiff was interested in working for defendant Bosch. (See EEOC Investigator Notes (DE 88-10) at 2). Wilson checked the HRIS screenshot which indicated plaintiff had been discharged for violation of rules, which Wilson interpreted not to be for good cause. (See EEOC Investigator Notes (DE 88-10) at 2, 3). Based on that information, Wilson instructed defendant Blue Arbor that "we are not interested in Mr. Davis." (See EEOC Investigator Notes (DE 88-10) at 2).

Plaintiff called in on February 4, 2013, again expressing an interest in working for defendant Bosch; however Bell explained that defendant Bosch was not interested in him returning. (Statement of Facts (DE 82, 85) ¶ 54; Bell Aff. (DE 83-4) ¶ 32). In March 2013, plaintiff discontinued his weekly availability calls to defendant Blue Arbor. (Statement of Facts (DE 82, 85) ¶ 58; Davis Dep. (DE 83-16) 76:1-8; Bell Aff. (DE 83-4) ¶ 34).

8

C.  Plaintiff Follows Up On Employment with Defendant Bosch

At some point after discontinuing his calls in to defendant Blue Arbor, plaintiff heard that his former position with defendant Bosch was vacant. (See Davis Dep. (DE 83-16) 76:6-12; July 26, 2013 Phone Call (DE 88-3) at 1:18). Plaintiff approached White at defendant Bosch directly to apply for the position, but White told plaintiff that defendant Bosch did all its hiring through defendant Blue Arbor and he would need to apply through it. (Davis Dep. (DE 83-16) 76:6-77:1). On July 26, 2013, plaintiff called Bell and stated "I know you had told me that Bosch had told you that I had sued them, and I was calling to see did y'all ever get that straightened out . . . ." (July 26, 2013 Phone Call (DE 88-3) 1:19-21; Davis Aff. (DE 88-2) ¶ 23). Bell replied "[w]ell that might have been my mistake . . . [b]ut I will check on that . . . ." (July 26, 2013 Phone Call (DE 88-3) 1:24-2:1). That same day, plaintiff called White and asked her "I want to find out, what's this I hear about your telling folks that I sued y'all. I never sued y'all." (See Davis Dep. (DE 88-11) 81:5-7). White allegedly paused for a second, then stated "[Bell] shouldn't have told you that." (See Davis Dep. (DE 88-11) 81:9-10).

In August 2013, Bell contacted Wilson to ask why defendant Bosch would not hire plaintiff. (See Bell Aff. (DE 83-4) ¶ 36; Davis Log Entries (DE 83-9) at 16; EEOC Investigator Notes (DE 88-10) at 2). Bell testifies that Wilson stated defendant Bosch was not interested in having plaintiff return because plaintiff had been terminated for cause. (See Bell Aff. (DE 83-4) ¶¶ 36-37; Davis Log Entries (DE 83-9) at 16). At some point in response to Bell reaching out in August 2013, Wilson reviewed plaintiff's archived employment data and discovered various documents relating to plaintiff's 2006 EEOC Charge. (EEOC Investigator Notes (DE 88-10) at 2). Bell asserts that she took Wilson's alleged explanation of termination for cause at face value, and understood based on

9

her prior conversation with plaintiff the separation to be somehow related to the settled worker's compensation claim. (Bell Aff. (DE 83-4) ¶¶ 37, 39).

On or about August 21, 2013, Bell spoke with plaintiff, explaining that defendant Bosch would not consider his candidacy for reasons disputed by the parties. (See Statement of Facts (DE 82, 85) ¶ 68; Bell Aff. (DE 83-4) ¶ 38; Davis Aff. (DE 88-2) ¶ 9). On October 23, 2013, plaintiff filed an EEOC Charge of Discrimination, asserting defendant Bosch and Blue Arbor both retaliated against him for filing his 2006 EEOC Charge. (See Statement of Facts (DE 82, 85) ¶ 72; 2013 EEOC Charge (DE 83-15) at 1). Bell asserts that she did not learn of plaintiff's 2006 EEOC Charge against defendant Bosch until she reviewed the allegations contained in the 2013 EEOC Charge. (See Bell Aff. (DE 83-4) ¶ 43).

Additional facts pertinent to the instant motion will be discussed below.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes

between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

Title VII's anti-retaliation provision makes to unlawful "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

"A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Warch v. Ohio Casualty Insurance Co., 435 F.3d 510, 520 (4th Cir. 2006) (internal citation omitted).

Alternatively, plaintiff may proceed under the McDonnell-Douglas burden shifting framework. See Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216 (4th Cir. 2016); Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015). "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of

causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal quotations omitted); see King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).

If plaintiff makes a prima facie case, "[t]he burden then shifts to the employer to produce a legitimate nondiscriminatory reason for the adverse action. If the employer does so, the plaintiff then bears the burden of showing that the employer's proffered reason is pretextual." Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998) (citing Ross v. Communications Satellite Corp., 729 F.2d 355, 365 (4th Cir. 1985)).

Viewing the evidence in the light most favorable to the plaintiff, plaintiff filed an EEOC Charge in 2006, which constitutes protected activity under Title VII. See 42 U.S.C. § 2000e-3(a); (Statement of Facts (DE 82, 85) ¶ 30; Davis Dep. (DE 83-16) 47:11-15). Plaintiff was also subjected to an adverse employment decision: defendant Bosch refusing to rehire him.[1] (See Bell Aff. (DE 83-4) ¶¶ 30-32, 36-38). However, plaintiff fails to produce evidence from which a reasonable trier of fact could infer that defendant Bosch, acting through defendant Blue Arbor, refused to rehire plaintiff because of his 2006 EEOC Charge.[2]

Plaintiff's case turns on certain statements Bell allegedly told plaintiff regarding why defendant Bosch would not hire him. On July 26, 2013, plaintiff told Bell over the phone "I know you had told me that [Bosch] had told you that I had sued them, and I was calling to see did y'all ever get that straightened out." (July 26, 2013 Phone Call (DE 88-3) 1:18-20; see Davis Aff. (DE

---

[1] The court assumes without deciding that defendants Blue Arbor and TESI Screening jointly employ plaintiff with defendant Bosch, and that defendants Blue Arbor and TESI Screening are an integrated employer.

[2] For this same reason, plaintiff has failed to produce sufficient direct or indirect evidence of retaliation. See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005).

88-2) ¶ 23). Bell responded "[w]ell, that might have been my mistake." (July 26, 2013 Phone Call (DE 88-3) 1:24-25). The court can reasonably infer from this exchange that Bell told plaintiff he would not be hired to work with defendant Bosch because he had "sued them." Around this time, White also allegedly stated "[Bell] shouldn't have told you that." (See Davis Dep. (DE 88-11) 81:9-10). In August 2013, Bell allegedly told plaintiff "[w]ell, Carl, they said you sued 'em. They were not going to hire you back." (Davis Dep. (DE 83-16, 88-11) 78:18-19).

If plaintiff's claim was that he was being retaliated against for initiating a lawsuit for discriminating in violation of Title VII, then he would meet his burden of production for showing retaliation under Title VII. See 42 U.S.C. § 2000e-3(a). However, plaintiff did not sue anybody. (See Davis Dep. (DE 83-16, 88-11) 78:13-25, 89:15-16). Plaintiff also testified that Bell never mentioned the 2006 EEOC Charge to him. (See Davis. Dep. (DE 83-16) 88:8-10, 89:7-8). In an effort to draw a causal connection to the 2006 EEOC Charge, plaintiff argues that, as used by Bell, the term "sued them" actually meant "filed an EEOC Charge against defendant Bosch." However, subsequent to filing his 2006 EEOC Charge, plaintiff was injured and initiated another dispute against defendant Bosch: plaintiff's worker's compensation claim before the North Carolina Industrial Commission.[3] (See 2011 Settlement Agreement (DE 83-2)). Accordingly, the court must evaluate whether a reasonable trier of fact can infer that when Bell used the phrase "sued them," it was solely in reference to filing the 2006 EEOC Charge, and not in whole or in part to plaintiff's worker's compensation claim and the circumstances arising thereunder. See Nassar, 570 U.S. at 352.

---

[3] The North Carolina Industrial Commission has jurisdiction over all workers' compensation disputes. See N.C. Gen. Stat. § 97-91.

Plaintiff's employment history does not support an inference that defendant Bosch was unwilling to rehire plaintiff because of the 2006 EEOC Charge, but does support an inference that defendant Bosch did not want to rehire plaintiff because of the 2011 Settlement Agreement. Defendant Bosch reinstated plaintiff and paid him backpay of $17,000 in exchange for dropping the 2006 EEOC Charge. (See Davis Dep. (DE 83-16) 55:2-25). Plaintiff's own testimony shows that defendant Bosch was willing to rehire plaintiff although he initiated the 2006 EEOC Charge. In contrast, plaintiff suffered injury on December 13, 2007 while working for defendant Bosch, and was subsequently terminated for exceeding his disability leave on September 18, 2008. (See Statement of Facts (DE 82, 85) ¶¶ 38, 41; 2011 Settlement Agreement (DE 83-2) at 1; Termination Letter (DE 83-3, 88-18)). In connection with plaintiff's injury, on November 30, 2011, plaintiff and defendant Bosch settled plaintiff's worker's compensation claim for $290,000.00. (See 2011 Settlement Agreement (DE 83-2)). Defendant Bosch has not hired plaintiff back since the 2011 Settlement Agreement. (See Statement of Facts (DE 82, 85) ¶ 42; Termination Letter (DE 83-3, 88-18)).

Plaintiff's disclosures to defendant Blue Arbor also provide no basis to infer a connection between the 2006 EEOC Charge and defendant Bosch's decision not to hire plaintiff. At no point did plaintiff discuss the 2006 EEOC Charge with Bell or anybody else working for defendants. (See Statement of Facts (DE 82, 85) ¶ 73; Davis Dep. (DE 83-16) 87:7-88:7). However, plaintiff did tell Bell that he was terminated by defendant Bosch on circumstances arising out of his worker's compensation claim. (Statement of Facts (DE 82, 85) ¶ 48; Davis Dep. (DE 83-16) 71:11-13; Bell Aff. (DE 83-4) ¶ 26). Therefore, plaintiff did not provide any information to defendant Blue Arbor from which a factfinder may reasonably infer that Bell meant the 2006 EEOC Charge when she said

15

"sued them." Instead, plaintiff's disclosures to Bell show that, if anything, Bell was referring to the 2011 Settlement Agreement, worker's compensation claim, and dispute over disability leave.

Additionally, the evidence in the record does not show that defendant Bosch communicated to defendant Blue Arbor that it was unwilling to hire him because of the 2006 EEOC Charge. On January 24, 2013, plaintiff told Bell that he was interested in working for defendant Bosch again, and he was willing to consider second shift work. (Statement of Facts (DE 82, 85) ¶ 51; Bell Aff. (DE 83-4) ¶ 30). At this point, defendant Blue Arbor reached out to defendant Bosch to see if they would rehire plaintiff, but defendant Bosch was not interested. (Statement of Facts (DE 82, 85) ¶ 51-53; Bell Aff. (DE 83-4) ¶¶ 30-31). The parties agree that defendant Blue Arbor was not told why defendant Bosch was not interested in rehiring plaintiff. (See Statement of Facts (DE 82, 85) ¶ 51-53; Bell Aff. (DE 83-4) ¶¶ 30-31).

Internally at defendant Bosch, Wilson reviewed plaintiff's file in January or February 2013, which showed plaintiff had been terminated for policy violations, and on that basis instructed defendant Blue Arbor that defendant Bosch was not interested. (See EEOC Investigator Notes (DE 88-10) at 2, 3). The stated policy violation that prompted plaintiff's termination was exceeding the permissible amount of leave time while receiving disability payments. (See Termination Letter (DE 83-3, 88-18)). Plaintiff presents no evidence that the policy violations alleged in the file, which are the purported basis for refusing to rehire plaintiff, relate to his 2006 EEOC Charge. Accordingly, the communications between defendants in January and February 2013 do not give rise to a reasonable inference that Bell was referring to the 2006 EEOC Charge when she later stated plaintiff had "sued" defendant Bosch, but do give rise to a reasonable inference that she was subsequently referring to the transactions involving plaintiff's worker's compensation claim.

16

Turning to the events in July and August 2013, plaintiff likewise fails to produce evidence to show Wilson or White told Bell not to hire plaintiff because of his 2006 EEOC Charge. (See July 26, 2013 Phone Call (DE 88-3) 1:18-20; Davis Aff. (DE 88-2) ¶ 23; Davis Dep. (DE 83-16, 88-11) 78:18-19). Bell asserts in her deposition that when she communicated with Wilson in August 2013 to inquire why defendant Bosch would not hire her back, Wilson stated it was because plaintiff had been terminated for cause. (See Bell Aff. (DE 83-4) ¶¶ 36-38). This is consistent with what Wilson later told plaintiff when he inquired as to why he could not return to work. (See August 27, 2013 Phone Call (DE 88-4) 4:16-20). As discussed above, the evidence in the record shows that plaintiff's termination arose from an alleged violation of defendant Bosch's disability leave policy. (Termination Letter (DE 83-3, 88-18).

Plaintiff does not offer evidence of the particulars of the discussion between Bell, White and Wilson. (See Davis Dep. (DE 83-16) 89:17-90:13). Accordingly, plaintiff does not contradict Bell's testimony that she did not learn of the 2006 EEOC Charge against defendant Bosch until she reviewed the allegations contained in the 2013 EEOC Charge. (Bell Aff. (DE 83-4) ¶ 43). The only logical conclusion left for any reasonable trier of fact is that when Bell allegedly said that plaintiff had "sued" defendant Bosch, she was referring to plaintiff's worker's compensation claims, which directly related to his termination.

Plaintiff's asserts that White and Wilson told Bell of the 2006 EEOC Charge because they knew of the 2006 EEOC Charge. Specifically, White knew of the 2006 EEOC Charge by virtue of working in the personnel department at the time of the incident, and Wilson knew of the 2006 EEOC Charge because he checked plaintiff's employee file in August 2013 after Bell reached out to him. (See August 27, 2013 Call (DE 88-4) 4:22-23, 5:10-13; EEOC Investigator's Notes (DE 88-10) at

17

2). Even taken as true, White and Wilson's knowledge of the 2006 EEOC Charge is insufficient to establish the requisite causal connection between the 2006 EEOC Charge and defendant Bosch's refusal to rehire plaintiff in 2013.[4] White allegedly became aware of plaintiff's 2006 EEOC Charge when the charge was filed, almost seven years before the instant dispute. Such knowledge is far too removed in time for a reasonable trier of fact to conclude that, based on White becoming aware of plaintiff's 2006 EEOC Charge, she instructed Bell not to rehire plaintiff because of his 2006 EEOC Charge. See Clark Cty. Sch. Dist., 532 U.S. 268, 273 (2001) (internal quotations omitted); see King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003). This is especially true where, shortly after plaintiff filed the 2006 EEOC Charge, defendant Bosch reinstated plaintiff and awarded him back pay. (See Davis Dep. (DE 83-16) 55:2-25).

Wilson's knowledge also does not support plaintiff's asserted meaning of Bell's comments. Wilson first learned of the 2006 EEOC Charge in August 2013. The conversations between Bell and plaintiff show that plaintiff had already been told that he was not being rehired because he had sued defendant Bosch in July 2013. (See July 26, 2013 Phone Call (DE 88-3) 1:17-2:3). Therefore, Wilson only learning of the 2006 EEOC Charge in August 2013 gives rise to the adverse inference that Bell was referring to something else when she had said that plaintiff had "sued" the company. See Lovelace, 681 F.2d at 241. This is fatal to plaintiff's case. See Nassar, 570 U.S. at 352.

Plaintiff also testifies that "[Bell] implied that they had discussed the reason why I was not there" and that defendant Bosch must have told Bell about the 2006 EEOC Charge because "I did not hear any calls back from [Bell], and she claims she offered me three jobs at the same time, that

---

[4] White or Wilson's alleged knowledge the 2006 EEOC Charge is also insufficient to prove intentional retaliation at the pretext stage of the McDonnell-Douglas framework. See Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 211 (4th Cir. 2014) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).

18

never happened." (See Davis Dep. (DE 83-16) 89:3-4, 90:4-6). However, plaintiff's first statement does not contradict Bell's testimony that she had discussed plaintiff's case with defendant Bosch. (See Bell Aff. (DE 83-4) ¶¶ 36-38). Plaintiff's second statement is equally unhelpful, because the evidence is speculative and does not explain what Bell meant when she allegedly stated that plaintiff "sued" defendant Bosch, which is crucial to plaintiff's case.

Title VII generally prevents unlawful employment discrimination "because of such individual's race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e-2(a). The anti-retaliation provision in turn protects those individuals who ". . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). While a refusal to rehire someone based on exceeding disability leave or based on a worker's compensation settlement might implicate anti-retaliation provisions under other laws, it does not implicate the anti-retaliation provision of Title VII. At best, plaintiff's evidence establishes he was not hired by defendants based on circumstances arising out of his termination for exceeding his disability leave and obtaining a worker's compensation settlement. Such evidence fails under Title VII's retaliation provision as a matter of law. Accordingly, the court grants summary judgment to defendants Blue Arbor and TESI Screening.

## CONCLUSION

Based on the foregoing, defendants' joint motion for summary judgment (DE 80) is GRANTED. Where no claims remain, the clerk is DIRECTED to close this case.

SO ORDERED, this the 1st day of March, 2019.

                                                LOUISE W. FLANAGAN
                                                United States District Judge